**IT IS ORDERED as set forth below:**

**Date: March 31, 2021**

_____

**Jeffery W. Cavender**
**U.S. Bankruptcy Court Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 18-62322-JWC |
| JOHN BRADLEY WEBSTER, | CHAPTER 7 |
| Debtor. | |

| | |
|---|---|
| NEIL C. GORDON, CHAPTER 7 TRUSTEE FOR THE ESTATE OF JOHN BRADLEY WEBSTER, | ADVERSARY PROCEEDING NO. 20-06148-JWC |
| Plaintiff, | |
| v. | |
| JOHN BRADLEY WEBSTER, Debtor, MAUREEN ANN WEBSTER, non-filing spouse, and MARQUE HOMES, LLC, | |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

1

This Adversary Proceeding (the "Adversary Proceeding") arises in the Chapter 7 bankruptcy case (the "Bankruptcy Case") of John Bradley Webster (the "Debtor") filed on July 26, 2018 (the "Petition Date"). Plaintiff Neil C. Gordon, the Chapter 7 Trustee appointed in the Bankruptcy Case (the "Trustee") filed the Complaint (the "Complaint") against Debtor, his wife Maureen Ann Webster ("Mrs. Webster"), and Marque Homes, LLC (the "LLC") (collectively, "Defendants") asserting an equitable interest in certain property held by Mrs. Webster and seeking recovery of alleged fraudulent transfers made by Debtor and the LLC to or for the benefit of Mrs. Webster. Before the Court is Defendants' Motion to Dismiss Adversary Proceeding (Doc. Nos. 5 and 6) (the "Motion"). Defendants assert that the Complaint is time-barred pursuant to the two-year statute of limitations in 11 U.S.C. § 546[1] and fails to state a plausible claim for relief under various theories. Trustee filed a Response to the Motion (Doc. No. 11) (the "Response") to which Defendants filed a Joint Reply (Doc. No. 13) (the "Reply"). Having considered the Complaint, the Motion, Trustee's Response, Defendants' Reply, and the record in the Adversary Proceeding and the Bankruptcy Case, the Court will grant the Motion in part and deny the Motion in part for the reasons set forth below.

## I.    FACTUAL BACKGROUND[2]

### A.    The Marietta Property

Trustee's Complaint filed on July 27, 2020, alleges that on October 15, 1997, Debtor's business, John B. Webster Building Company, Inc. (the "Business"), purchased certain residential property located at 5413 Beau Reve Park, Marietta, GA 30068 (the "Marietta Property") as undeveloped land for $82,500.00 and constructed a residence on it. Compl. ¶ 23. One year later,

---

[1] All statutory references herein are to the Bankruptcy Code (11 U.S.C. §101 *et. seq.*) unless otherwise specified.

[2] The factual allegations of the Complaint recited herein are assumed to be true solely for purposes of ruling on the present motion.

the Business transferred its interest in the improved Marietta Property to Debtor. Compl. ¶ 24. On June 24, 2003, Debtor obtained a loan secured by the Marietta Property in the original principal amount of $450,000.00. Compl. ¶ 25. Subsequently, Debtor transferred his interest in the Marietta Property to Mrs. Webster via quit claim deed (the "Quit Claim Deed") dated August 30, 2007. Compl. ¶ 28. The Quit Claim Deed was recorded with the Cobb County Clerk of Superior Court on September 14, 2007. Compl. ¶ 29. Debtor received no consideration for the transfer of the Marietta Property (the "Transfer") outside of "love and affection." Compl. ¶¶ 30, 31. Debtor and Mrs. Webster continue to reside in the Marietta Property, which Trustee contends has approximately $500,000 of equity currently. Compl. ¶¶ 21, 27.

B.    The Governors Towne Property

At the time of the Transfer, the Debtor was deep in debt and was being aggressively pursued by Branch Banking and Trust Company ("BB&T") in connection with an unrelated debt. Compl. ¶ 32. In April of 2005, the Business obtained a loan of $956,000.00 to purchase a separate property to construct a home (the "Governors Towne Property"). Compl. ¶ 33(a). Debtor executed a personal guaranty of that loan on April 29, 2005, Compl. ¶ 33(b), with the loan being later extended and modified in February and December of 2006. Compl. ¶ 33(c). BB&T, as successor to the original lender, foreclosed on the Governors Towne Property in 2008 and acquired title to the same with a credit bid of $1,250,000. Compl. ¶¶ 33(e), (f). BB&T filed a complaint to confirm the foreclosure sale to pursue a deficiency against both the Business and Debtor. Compl. ¶ 33(f). A final order confirming the sale was entered on March 16, 2012, which was affirmed by the Georgia Court of Appeals in January of 2013. Compl. ¶¶ 33(f), (g). Debtor's amended schedules filed in the Bankruptcy Case (Doc. No. 29) list a 2014 judgment obtained by BB&T against him in Cobb County for $491,566.00. Compl. ¶ 33(h). The lien recorded with respect to the judgment

3

was issued by the United States District Court and recorded in Cobb County. *Id.* Also, in the Bankruptcy Case, the Internal Revenue Service (the "IRS") filed a proof of claim (Claim 2-1) in the total amount of $29,484.89, for tax years 2012 through 2017, comprised of a $15,515.83 priority unsecured claim and a $13,959.06 general unsecured claim. Compl. ¶ 34.

C.      Transfers to or for the Benefit of Mrs. Webster

From 2007 to the commencement of Debtor's Bankruptcy Case, Debtor, either individually or through the LLC, paid the mortgage, utilities, and other bills for the maintenance of the Marietta Property and paid Mrs. Webster's credit card obligations. The mortgage for the Marietta Property remains solely in Debtor's name, and he has always maintained the mortgage payments as well as all utilities, property taxes, and the overall upkeep of the Marietta Property. Compl. ¶ 36. Mrs. Webster is a homemaker, receiving a small monthly social security income with no ability to pay the mortgage or maintain the Marietta Property. *Id.* Trustee also alleges on information and belief that Debtor or the LLC paid "approximately $2,700 per month for [Mrs.] Webster's separate credit card obligations (the 'Credit Card Transfers')" since 2007. Compl. ¶¶ 37, 38.[3] Trustee alleges other transfers by Debtor or the LLC "to or for the benefit of Mrs. Webster since 2007, including his payment of utilities, property taxes . . . , and the overall upkeep of the [Marietta] Property." Compl. ¶ 39. Trustee refers to these transfers, together with the Credit Card Transfers, collectively as the "Spousal Transfers." *Id.* Trustee alleges that at the time of the Petition Date, Debtor's debts exceeded the sum of his assets and that such status had not materially changed from the time of the Transfer of the Marietta Property to the Petition Date. Compl. ¶¶ 41, 42. Trustee alleges that the bills paid by the LLC or by Debtor for the ten years preceding the Petition Date are avoidable

---

[3] Trustee alleges the LLC was formed in 2010, dissolved in 2012, and reinstated in 2017, and that Debtor is its sole member. Compl. ¶ 8.

as fraudulent conveyances and that the LLC's assets should be used to satisfy Debtor's liabilities. Trustee asserts that Debtor and the LLC are alter egos, with Debtor exercising such complete control over the LLC as to cause it to make transfers to Mrs. Webster's creditors. Based on the foregoing Trustee requests the following relief in the Complaint: a declaratory judgment that the Estate owns a 50% interest in the Marietta Property (Count I); avoidance of the Spousal Transfers under 11 U.S.C. § 548(a)(1)(A) (Count II); avoidance of the Spousal Transfers under 11 U.S.C. § 548(a)(1)(B) (Count III); avoidance of the Spousal Transfers made since July 26, 2008 under O.C.G.A. § 18-2-74, 28 U.S.C. § 3306, 26 U.S.C. § 6502 or other applicable law and 11 U.S.C. § 544 (Count IV); avoidance of the Spousal Transfers made since July 26, 2008 under O.C.G.A. § 18-2-75, 28 U.S.C. § 3306, 26 U.S.C. § 6502 or other applicable law and 11 U.S.C. § 544 (Count V); recovery of the avoided Spousal Transfers from Mrs. Webster pursuant to 11 U.S.C. § 550 (Count VI); and a declaratory judgment that the LLC and Debtor are alter egos, making the LLC liable for Debtor's obligations (Count VII).

## II.    LEGAL ANALYSIS

### A.    Standard of Review

Federal Rule of Civil Procedure 12(b)(6)[4] permits a defendant in an adversary proceeding to move for dismissal when a plaintiff fails to state a claim upon which relief can be granted. Pursuant to Rule 8(a)(2), "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The complaint must contain "sufficient factual matter, accepted

---

[4] All references to the "Rules" are to the Federal Rules of Civil Procedure as made applicable by the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") unless otherwise specified.

as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). However, under Rule 9 when alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally. Fed. R. Civ. P. 9.

B.      Shotgun Pleadings

As an initial matter, Defendants assert that Trustee's Complaint is a classic shotgun pleading which is confusing and difficult to respond to because every count of the Complaint reincorporates by reference all preceding paragraphs. Defendants assert that fact alone is cause for dismissal of the Complaint, or at the very least cause for ordering Trustee to replead the Complaint with greater specificity and precision. The Court agrees. The Eleventh Circuit has repeatedly reminded litigants of the problems of shotgun pleadings, one form of which is exemplified by "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Barmapov v. Amuial*, No. 19-12256, 2021 WL 359632, at *2 (11th Cir. Feb. 3, 2021) (quoting *Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1321 (11th Cir. 2015)). Such pleadings "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Id.* (quoting *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1295 (11th Cir. 2018)) (alterations adopted) (internal quotation marks omitted).

Trustee's Complaint clearly meets the definition of a shotgun pleading as defined by the Eleventh Circuit. Each count of the Complaint realleges all prior paragraphs of the Complaint,

6

and each successive count incorporates by reference all prior allegations, making it difficult, if not impossible, for Defendants and the Court to comprehend the nature and extent of each claim asserted.[5]  Trustee in his Response asserts that he had no choice but to include some paragraphs in his Complaint that might be considered "conclusory" due to Defendant's alleged failure to cooperate with discovery in the underlying Bankruptcy Case.  Any discovery disputes between the parties in the Bankruptcy Case, however, did not compel Trustee to ignore longstanding and oft-cited prohibitions on the filing of shotgun pleadings.  Because the Complaint clearly meets the definition of a shotgun pleading as defined by the Eleventh Circuit, the Complaint must be dismissed without prejudice to Trustee's right to replead with greater precision and clarity to afford Defendants and the Court an ability to understand the breadth and scope of each separate claim alleged.  Nonetheless, the Court will address the remaining issues Defendants raise in their Motion in hopes of avoiding the necessity of revisiting any of these issues in response to any amended complaint filed by Trustee.

      C.     Timeliness of Complaint

Defendants next assert that Counts II through VI of the Complaint should be dismissed because the Complaint was filed outside the two-year statute of limitations under § 546(a)(1)(A). That section provides:

> (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of--
>
> > (1) the later of--
> >
> > > (A) 2 years after the entry of the order for relief; or

---

[5]  As just one example of many, Defendants argue that it is difficult to tell which transfers are sought to be avoided in Counts IV and V of the Complaint, purported to be directed at Spousal Transfers since July 28, 2008, given that Trustee incorporates by reference allegations of transfers of the Marietta Property into such counts as well.  Because Trustee incorporates by reference all previous paragraphs of the Complaint, Defendants and the Court are left to wonder exactly what transfers are sought to be avoided in such counts, and particularly whether avoidance of the transfer of the Marietta Property is a subject of such counts.

> (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or

> (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a)(1)(A).  The bankruptcy petition was filed on July 26, 2018, and Defendants assert that the deadline for filing the Complaint was  July 26, 2020.  Because the Complaint was filed on July 27, 2020, Defendants ask the Court to dismiss as untimely the counts brought under §§ 544, 545, 548, and 553.

Trustee responds that Bankruptcy Rule 9006(a) applies to the statute of limitations in § 546, which allows a deadline expiring on a Sunday or Saturday to roll over to the next business day.  Because the deadline in this case fell on Sunday, July 26, 2020, Trustee argues the deadline rolled over to July 27, 2020, the next business day.  As a result, Trustee argues the filing of the Complaint was timely.  The Court agrees with Trustee.

Bankruptcy Rule 9006(a) applies to the limitations periods  in § 546, so the filing deadline in this case rolled over to the next business day when the original deadline fell on a Sunday.  Bankruptcy Rule 9006(a) states:

> (a) **Computing time**
>
> The following rules apply in computing any time period specified in these rules, in the Federal Rules of Civil Procedure, in any local rule or court order, or in any statute that does not specify a method of computing time.
>
> **(1) Period stated in days or a longer unit**
>
> When the period is stated in days or a longer unit of time:
>
> (A) exclude the day of the event that triggers the period;
>
> (B) count every day, including intermediate Saturdays, Sundays, and legal holidays; and
>
> (C) include the last day of the period, but if the last day is a Saturday, Sunday, or legal holiday, the period continues to

> run until the end of the next day that is not a Saturday,
> Sunday, or legal holiday.

Fed. R. Bankr. P. 9006(a). Curiously, Defendants failed to address the application of Rule 9006(a) in their Motion and failed to address in any way Trustee's arguments on this point in their Reply. Courts in the Eleventh Circuit, however, regularly apply Bankruptcy Rule 9006(a) to compute the statute of limitations under § 546(a). *In re Pugh*, 158 F.3d. 530, 536 (11th Cir. 1998) (citing with approval cases concluding that Bankruptcy Rule 9006(a) should be used in computing limitations period in § 546(a)).[6] Because Bankruptcy Rule 9006(a) is used in computing the beginning and ending dates of the statute of limitations under § 546(a), the deadline in this case rolled over from Sunday, July 26, 2020, to the next business day of July 27, 2020. Accordingly, Trustee's Complaint was timely filed and is not barred by the statute of limitations in § 546. Defendants' Motion seeking dismissal of Counts II through VI of the Complaint on such grounds will be denied.

      D.     Count I Equitable Interest in Marietta Property

Defendants also request dismissal of Count I, which seeks a determination that Debtor has a 50% equitable interest in the Marietta Property. Defendants assert that Trustee's request is unsupported under Georgia law which governs the nature of Debtor's interest in the Marietta Property. They argue that such an equitable interest arises only on filing of divorce. They further argue that principles of equity would bar Trustee from asserting this interest even if it were recognized by Georgia law, as BB&T, in whose shoes Trustee seeks to stand, failed to exercise

---

[6] Some decisions have taken the view that § 546(a) acts not as a true statute of limitations, but as a mechanism divesting the court of subject-matter jurisdiction, which would prevent Bankruptcy Rule 9006(a) from operating to roll-over the deadline. *See Martin v. First Nat'l Bank of Louisville (In re Butcher)*, 829 F.2d 596 (6th Cir. 1987) (analogizing § 546 to similar provision in Truth in Lending Act and holding § 546 acted as jurisdictional bar that cannot be extended under Bankruptcy Rule 9006). The Sixth Circuit abrogated *Butcher*, however, in *Bartlik v. U.S. Dept. of Labor*, 62 F.3d 163, 166 (6th Cir. 1995), holding that the application of Rule 6(a), whose counterpart is Bankruptcy Rule 9006, does not act to enlarge the jurisdiction of the court when computing the beginning and end of a statute of limitations. Furthermore, the Eleventh Circuit explicitly rejected the notion that § 546(a) was a jurisdictional statute of limitations in *In re Pugh.* 158 F.3d at 537.

reasonable diligence to discover the Marietta Property Transfer when they filed suit in 2008 and

obtained a judgment against Debtor in 2013. Therefore, Defendants assert that recognition of any

equitable interest would contradict Georgia law.

In Count I, Trustee urges the Court to recognize that Debtor has an equitable interest of no

less than 50% in the Marietta Property, citing to *Coady v. D.A.N. Joint Venture III, L.P. (In re

Coady)*, 588 F.3d 1312 (11th Cir. 2009) in support.[7] Compl. ¶ 45. In *Coady*, the Eleventh Circuit

considered a bankruptcy court's decision to deny the debtor's discharge under 11 U.S.C. § 727(a).

*Id.* That section provides for denial of a discharge where "the debtor, with intent to hinder, delay,

or defraud a creditor or an officer of the estate charged with custody of property under this title,

has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred,

removed, destroyed, mutilated, or concealed . . ." property of the debtor within one year of filing

the petition, or property of the estate after filing the petition. 11 U.S.C. § 727(a). The court, in

affirming the denial of the debtor's discharge under § 727(a), noted that the debtor acquired an

equitable interest in his wife's businesses (in which he never possessed an ownership interest) by

diverting the fruits of his labor into his wife's assets, who then paid for his expenses. 588 F.3d at

1315-16. The court acknowledged the broadness of the language in § 541(a)(1) as well as the

atypical nature of the concealment in that case. *Id.* Because the debtor diverted such fruits of his

labor, he acquired an interest in those assets, which as arranged amounted to a concealment of

"property of the estate," allowing the court to deny the debtor a discharge. *Id.*

---

[7] Trustee also cites *Rotella & Assocs., P.A. v. Bellassai (In re Bellassai)*, 451 B.R. 594, 603 (Bankr. S.D. Fla. 2011) in his Response to the Motion, which is another case with facts similar to *Coady* where the court found the debtor diverted the fruits of his labor into his girlfriend's assets (there a car wash business) in a fraudulent concealment scheme, thereby gaining an equitable interest in her business. The court found as in *Coady* that the debtor's actions were sufficient to deny discharge under § 727. *Id.*

In the Motion, Defendants dispute Trustee's reliance on *Coady*, arguing that it does not support the proposition that Debtor holds an equitable interest in the Marietta Property. While *Coady* involved denial of discharge based on fraudulent concealment, here Trustee requests the Court to recognize an interest in property to be included in the estate post-discharge. Defendants argue that using a fraudulent concealment case such as *Coady* to include such an interest in the estate would create a "dangerous loophole" allowing Trustee to circumvent the statute of limitations for avoidance actions for property transferred over ten years ago. Defendants also note the factual dissimilarities between this case and *Coady*. They argue that Trustee has not alleged the predicate acts as required in that case such as concealment of property, diversion of the debtor's fruits of labor, or that Mrs. Webster owned any businesses which Debtor used to protect his assets. For those reasons, Defendants ask the Court to reject Trustee's request under *Coady* to recognize the bankruptcy estate's entitlement to Debtor's alleged "equitable interest" in the Marietta Property.

In his Response, Trustee inserts a lengthy block quotation from *In re Taylor,* 320 B.R. 214 (Bankr. N.D. Ga. 2005) (Mullins, J.) but offers no explanation of how the case supports his position. *Taylor* recognized that Georgia's homestead exemption statute provides a non-debtor spouse an equitable interest in a residence vested solely in the debtor's name. 320 B.R. at 220. The debtor there sought to use the larger exemption provided by the last sentence of O.C.G.A. § 44-13-100(a)(1), which states: "[i]n the event title to property used for the exemption provided under this paragraph is in one of two spouses who is a debtor, the amount of the exemption shall be $20,000," rather than the normal $10,000 exemption. *Id.* at 216-17. The court examined the legislative history of the statute and the opinions in *In re Neary*, No. 03-97808-MGD, 2004 WL 3222872 (Bankr. N.D. Ga. April 21, 2004) (Diehl, J.) and *In re Hartley,* No. 01-13332, slip op. at

Doc. No. 21 (Bankr. N.D. Ga. July 18, 2002) (Drake, J.).   From those authorities, the court concluded that the purpose of the statute's last sentence was to protect a non-debtor spouse's interest in the residence despite title resting solely with the debtor spouse.   *Id.* at 219.   Where a non-filing spouse has joint title to the property, that spouse does not require the statute's protection because they already have an entitlement to share in any equity in the property.   *Id.*   The court concluded that a debtor who has sole title to real property may claim the additional exemption to protect the non-debtor spouse's equitable (as opposed to equity) interest in the property.   *Id.*   The Court fails to see how this case supports Trustee's position, and Trustee's Response provides no insight.

Importantly, while federal law determines what constitutes property of the estate, state law determines the nature of a debtor's interest in property.   *See Two Trees v. Builders Transp., Inc. (In re Builders Transp., Inc.)*, 471 F.3d 1178, 1185 (11th Cir. 2006).   Under Georgia law, courts recognize the doctrine of equitable distribution of marital assets at divorce.   *Stokes v. Stokes,* 246 Ga. 765, 770 (1980).   "[O]nly property acquired as a direct result of the labor and investments of the parties during the marriage is subject to equitable division."   *Wright v. Wright*, 277 Ga. 133, 133 (2003) (citing *Payson v. Payson*, 274 Ga. 231, 232 (2001)).   Furthermore, appreciation in separate property can be classified as marital if the spouse's efforts caused that appreciation, rather than market forces.   *Id.* at 133-34.   Additionally, "Georgia law presumes that an interspousal transfer of separate property is a gift and therefore the property becomes marital property."   *Dixon v. Dixon*, 352 Ga. App. 169, 173 (2019).   Here, the Marietta Property would likely be considered Debtor and Mrs. Webster's marital property, but that conclusion does not end the inquiry. [8]

---

[8] Trustee's allegations do not indicate whether the Debtor's initial purchase of the Marietta Property occurred during Debtor and Mrs. Webster's marriage.   However, the Transfer in 2007 likely would have caused it to be deemed marital. Compl. ¶¶ 28, 29.

Despite this classification, Debtor's entitlement to an interest in the Marietta Property does not arise under Georgia law until either Debtor or Mrs. Webster file a divorce proceeding. The instant proceeding is not a divorce action, and as such, no basis exists under Georgia law for the Court to equitably divide the Marietta Property. *Segars v. Brooks,* 248 Ga. 427, 428 (1981). The court in *Nicholson v. Wells Fargo Bank, N.A. (In re Nicholson)*, Nos. 16-40668-EJC, 16-04038-EJC, 2017 WL 991698, at *4 (Bankr. S.D. Ga. Mar. 10, 2017), held that until the need for equitable division arises (i.e. in divorce), the debtor has no property rights, legal or equitable, in the marital property titled solely in the non-debtor spouse's name. In that case, a debtor filed a complaint against a creditor who commenced foreclosure proceedings on the marital residence. *Id.* at *3. The debtor argued that she held an equitable interest in the property that should be included in the bankruptcy estate and therefore protected by the automatic stay. *Id.* Although the property was titled solely in the husband's name, it was considered marital property as he acquired it after they married. *Id.* at *4. The debtor also alleged she regularly contributed to paying the mortgage as well as to repairing and improving the residence. *Id.* Notwithstanding those facts, the court found the debtor was not entitled to a potential interest in the residence, and therefore, the marital residence was not part of the bankruptcy estate. *Id.* Under this reasoning and without reference to any allegations of a fraudulent transfer, Debtor would simply have an inchoate potential interest, not an existing right under Georgia law to the Marietta Property includable in property of the bankruptcy estate. Georgia law does not support the notion that by reason of Debtor and Mrs. Webster's marriage alone, Debtor has an actual entitlement to the Marietta Property titled solely in Mrs. Webster's name.

Furthermore, Trustee's reliance on *Coady* and *Taylor* is misplaced. Neither case recognizes an interest in property of the kind Trustee asserts. *Coady* might support an objection

to Debtor's discharge based on a nebulous theory of equitable interest arising from a fraudulent scheme designed to circumvent creditors.  It does not support Trustee's theory that Debtor had an entitlement to 50% of the Marietta Property that became property of the bankruptcy estate on the day he filed his petition.   Likewise, *Taylor* recognizes some equitable interest exists for the limited purpose of the Georgia homestead exemption where a non-debtor spouse does not share title to real property vested only in the debtor's name.  *Taylor* does not provide that such equitable interest may be included in the estate where the debtor does not hold title to the marital property.  Surely, Trustee would not support a reading of *Taylor* that could give non-debtor spouses a 50% equitable interest in property owned solely by a debtor, but Trustee's citation to *Taylor* implies that very position.  Such a reading of *Taylor* is correctly foreclosed by *Nicholson.  Coady* and *Taylor* find equitable interests in specific contexts not at issue in this case.  Neither case creates an independent cause of action under principles of equity as Trustee suggests, nor does Trustee cite any principle of Georgia law that creates the interest he alleges.  Trustee's claim in Count I is simply a fraudulent transfer argument repackaged as a claim in equity to avoid potential statute of limitations hurdles resulting from the fact that the Transfer from Debtor to Mrs. Webster occurred over ten years ago. Compl. ¶¶ 28, 29.   Whether Trustee may reach back to that Transfer under fraudulent transfer theories is addressed in part in later portions of this order, but Trustee has offered no authority that convinces the Court that a separate claim in equity exists under the facts as alleged in the Complaint.   Because the Court does not find such a claim exists, the Court need not reach Defendants' arguments regarding BB&T's due diligence to discover the transfer.[9]  For the above

---

[9] Trustee does not respond to Defendants' arguments relative to BB&T in connection with Count I, but Trustee does allege that BB&T had no reason to check property records prior to obtaining its judgment in 2013 in Count IV and in Section D of the Response. See Section II.G.3.a, *infra,* finding that BB&T was on constructive notice of the Marietta Property Transfer when it was recorded in 2007.

stated reasons, Trustee's Count I fails to state a claim upon which relief may be granted and will be dismissed with prejudice.

      E.      Count VII Reverse Veil-Piercing

Defendants next request dismissal of Count VII of the Complaint, asserting Trustee is improperly attempting to invoke reverse veil-piercing contrary to Georgia law.  Reverse veil-piercing is a doctrine where a third party attempts to pierce the corporate veil to reach assets of the corporation to satisfy an individual insider's debts.  In contrast, traditional veil-piercing involves imposing personal liability on insiders for a corporation's debts or obligations.  *Piercing the Corporate Veil*, Black's Law Dictionary (11th ed. 2019).  Defendants argue that because Georgia does not recognize reverse veil-piercing, Count VII must fail.

In Count VII, Trustee requests the Court declare Debtor and the LLC to be alter egos, Compl. ¶ 82, and seeks to make the LLC liable for Debtor's debts and allow Trustee to collect money or property from the LLC to satisfy those debts.  Compl. ¶ 83.  Trustee cites to *Logan v. McLean (In re McLean)*, 498 B.R. 525 (Bankr. D. Md. 2013) in opposition to the Motion.[10]  In *McLean*, the trustee sought to avoid allegedly fraudulent transfers from the debtor's company to the debtor's wife, labeled as her "salary."  *Id.* at 533.  The court found that those payments were an intentional misdirection of payment for the services and expertise of the debtor, classifying the transfers instead as a transfer from the debtor to his wife of the debtor's right to receive income.[11]

---

[10]  Similar to his citation to *Taylor* discussed above, Trustee's Response block quoted a several page long passage from the case (Resp. 11-13) without explanation or analysis of its application to the facts of this case.  The Court finds such a response completely unhelpful.

[11]  The court in *McLean* conducted this analysis under the Maryland Uniform Fraudulent Transfer Act, and the Court has not found analogous cases in Georgia.  *McLean* is not binding precedent for this Court.  While the state courts in Maryland have simply alluded to the doctrine in various decisions, one Maryland bankruptcy court went so far as to apply reverse veil-piercing.  *See Greystone Operations, LLC v. Steinberg*, No. 454, Sept. Term, 2016, 2017 WL 136365, at *4 n.4 (Md. Ct. Spec. App. Apr. 12, 2017) and *Simpson v. Levitsky (In re Levitsky)*, 401 B.R. 695 (Bankr. D. Md. 2008).  These cases suggest Maryland operates under a different legal landscape, one much less settled than in Georgia as detailed below.

*Id.* at 536.  Trustee alleges "Debtor has routed, or caused to be routed, to [Mrs.] Webster income related to the LLC, which he owns and/or controls, to avoid having funds at his disposal to satisfy his liabilities to creditors . . . and to support his lifestyle to maintain a valuable home."  Compl. ¶ 80.  Therefore, Trustee argues the LLC's assets should be used to satisfy Debtor's obligations.

While Trustee attempts to argue in his Response that Count VII labeled "Alter Ego/Piercing Corporate Veil (Against Debtor and Marque Homes, LLC)" is not a reverse veil-piercing claim, the allegations of Count VII cannot be read otherwise.  Trustee is requesting the Court reach into the LLC's assets and include those assets in the bankruptcy estate to satisfy Debtor's debts on behalf of Trustee and Debtor's creditors.  Compl ¶¶ 83, 84.  The Georgia Supreme Court defined reverse veil-piercing as a doctrine that permits a third-party creditor to "pierce the veil" to satisfy debts of an individual insider out of the corporation's assets.  *Acree v. McMahan*, 276 Ga. 880, 881 (2003).  Trustee's claim in Count VII squarely fits this definition.

The Georgia Supreme Court first addressed the issue of whether Georgia recognizes a claim for third-party reverse veil-piercing in *Acree v. McMahan,* 276 Ga. 880 (2003)*.*  The court in *Acree* acknowledged decisions from the Georgia Court of Appeals labeling such a doctrine as simply a recast of fraudulent conveyance theory.  *Id.* at 881.  The court also noted that allowing such claims could undermine the purpose of the corporate form and unsettle corporate creditors at the prospect of losing out to individual shareholders' creditors.  *Id.* at 882.  Such a theory would allow judgment creditors to bypass normal collection procedures to reach a corporation's assets, thereby prejudicing other non-culpable shareholders.  *Id.*  For those reasons, and that the plaintiff had other adequate remedies at law, the court refused to accept third-party reverse veil-piercing as a valid cause of action under Georgia law.  *Id.*

The Georgia Court of Appeals later analyzed this doctrine and the *Acree* opinion in *Carrier 411 Services, Inc. v. Insight Technology, Inc*., 322 Ga. App. 167 (2013).  Following the Georgia Supreme Court's analysis, the Court of Appeals noted that "[s]ince other, traditional legal remedies were available to the plaintiff, the Georgia Supreme Court rejected the reverse-piercing claim." *Id.* at 170.  The Court of Appeals, however, did not reach the issue of whether the bar against the doctrine applied in that case, or whether an exception was carved out (i.e., whether the plaintiff had other legal remedies), since the plaintiffs in reality were pursuing a statutory garnishment action, not a reverse veil-piercing theory.  *Id.*

In 2014, the court in *Gordon v. Harman (In re Harman)*, 512 B.R. 321, 341 (Bankr. N.D. Ga. 2014) (Murphy, J.) analyzed whether a claim for reverse veil-piercing existed under Georgia law in light of the decisions in *Acree* and *Carrier 411*.  Noting that the language in *Acree* and *Carrier 411* was unclear as to whether the Georgia Supreme Court intended to make any exception to the general bar on such claims, the court found an exception existed where a plaintiff has no other adequate remedy at law.  *Harman,* 512 B.R. at 340.  In contrast, the court in *Howell v. U.S. Foods, Inc. (In re Bilbo),* Nos. 11-13160-WHD, 13-1054, 2014 WL 689097, at *6 (Bankr. N.D. Ga. Feb. 5, 2014) (Drake, J.) applied Georgia's bar against third-party reverse veil-piercing.  The trustee in *Bilbo* was trying to establish that the debtor was jointly and severally liable for the corporation's debt to a third-party company, thus creating a simultaneous antecedent debt for both the corporation and the debtor.  *Id.* at *6.  To do so, the court noted the trustee would have to link assets belonging to the corporation to the debtor, which would require the doctrine of reverse veil-piercing.  *Id.*  The court held that because Georgia does not recognize that doctrine, no cause of action linking the corporation's assets to the debtor existed.  *Id.*

After the *Harman* and *Bilbo* decisions, the Georgia Court of Appeals was again presented with the question of whether any exception to the general bar against reverse veil-piercing claims existed in *Corrugated Replacements, Inc. v. Johnson*, 340 Ga. App. 364, 370 (2017). There, the Court of Appeals concluded that no such exception existed, holding as follows:

> Because existing remedies were adequate, the Supreme Court concluded that inventing a new theory of liability like reverse veil-piercing was unnecessary and "would constitute a radical change to the concept of piercing the corporate veil in this state and, thus, should be created by the General Assembly and not by this Court." This strong language rejecting reverse piercing leaves no door open for an exception to exist. The Supreme Court firmly closed that door, and we are in no position to carve a hole in it.

340 Ga. App. at 369-70. While the Georgia Supreme Court later disapproved of that case on other grounds, it did not review its holding relative to reverse veil-piercing. *Reid v. Morris*, 845 S.E.2d 590 (Ga. 2020) (disagreeing with Court of Appeals' interpretation of punitive damages statute). Thus, any prior confusion that existed as to whether Georgia recognizes a claim for reverse veil-piercing has now been resolved by the Georgia appellate courts. Georgia recognizes no such claim nor any exception to the bar against it. Consequently, the allegations in Count VII fail to state a claim for which relief may be granted, and Count VII will be dismissed with prejudice.

F.    Counts II and III

1.    *Post-Petition Transfer Allegations*

Defendants argue that Counts II and III of the Complaint fail because Trustee does not seek to recover pre-petition transfers under § 548. It appears Trustee made a scrivener's error in paragraphs 53 and 57 in Counts II and III, respectively. Those paragraphs allege "Plaintiff is entitled to avoid the portion of the Spousal Transfers that was accomplished after July 26, 2018" pursuant to § 548. The relevant portion of § 548 states that a "trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made

18

or incurred on or within 2 years before the date of the filing of the petition." By its plain language, § 548 applies solely to prepetition transfers, not post-petition transfers. Trustee cannot seek to recover any transfers made after the Petition Date pursuant to this section, and it does not appear Trustee is making any allegations under § 549, applicable to transfers made after the Petition Date. Trustee fails to address this ambiguity in his Response. Therefore, to the extent Counts II and III seek to avoid post-petition transfers pursuant to § 548, those counts are dismissed without prejudice to Trustee's right to replead to allege transfers made by the Debtor within the two years prior to the Petition Date.

### 2.    *Transfers Made by the LLC*

Defendants also argue that Trustee may not reach any transfers made by the LLC as alleged in Counts II and III because the assets transferred are not Debtor's property. Under this argument, Defendants assert Trustee lacks standing to challenge transfers of a separate non-debtor entity. Trustee alleges in Count II that the Spousal Transfers are transfers of Debtor's interest in property and that any of those transfers made by the LLC are effectively transfers made by Debtor. Compl. ¶ 49. In support of this allegation, Trustee cites *McLean*'s holding, applying Maryland law, that the LLC in that case made transfers to the debtor's wife as an intentional misdirection of payment for the debtor's services, making them voidable as a transfer of the debtor's right to receive income to his wife.

Debtor, however, has no interest in the LLC's property under Georgia law. As noted previously in Section II.D., *supra*, state law governs the nature of a debtor's interest in property included in the bankruptcy estate. O.C.G.A. § 14-11-501 provides that members of a limited liability company have no interest in specific limited liability company property. Rather, members have a personal property interest in the company itself with the right to share in the profits and losses as designated in the LLC's articles of organization or operating agreement or equally if

neither instrument specifies.  O.C.G.A. §§ 14-11-403; 14-11-501.  Judgment creditors of a member

may obtain a charging order against the member's interest in the limited liability company, gaining

the rights of an assignee of such interest in the LLC.  O.C.G.A. § 14-11-504.  Even when a creditor

obtains a charging order against a member's interest, however, that creditor still may not reach the

LLC's assets to satisfy its judgment.  *Gaslowitz v. Stabilis Fund I, LP*, 331 Ga. App. 152, 156

(2015) (citing to *Acree* for proposition that third-party creditor may not disregard corporate form

to reach corporate assets to satisfy claims against individual insiders).  This statutory scheme in

conjunction with Georgia's firm policy against disregarding the corporate form confirms that

Georgia does not give a creditor of an individual member a direct remedy against company

property.[12]  *Id.*  They may only cause the diversion of monetary payments the member would

expect to receive from the LLC.  *Id.*

In opposition, Trustee simply argues he has a cause of action against Debtor and the LLC

and cites to the growing body of caselaw allowing trustees to reach beyond the statutes of limitation

for fraudulent conveyance claims under the Bankruptcy Code and state law.  (Resp. 9-11).  Trustee

points to nothing under the Bankruptcy Code or Georgia law that authorizes a trustee to recover

fraudulent transfers made by a non-debtor limited liability company owned by the debtor.  As

Defendants point out in their Reply, Trustee does not even attempt to address the fact that a trustee

---

[12]  *See also Merrill Ranch Props., LLC v. Austell*, 336 Ga. App. 722, 730 (2016) (holding that when creditor of member, without creditor-debtor relationship with company, obtains charging order, it does not gain "standing under UFTA to set aside transfer of assets made by LLC solely by obtaining" that order); *Cmty. & S. Bank v. Lovell*, 302 Ga. 375, 376 (2017) (holding in avoidance action where company was not itself indebted to member-debtor's creditor that "the UFTA only permits the avoidance of a fraudulent transfer of a debtor's property," and that "[i]t is settled in Georgia that a creditor generally cannot reach the assets of a corporation to satisfy the debt of a shareholder"); *Dych v. VanBrocklin (In re VanBrocklin)*, 566 B.R. 90, 97 (Bankr. N.D. Ga. 2017) (Drake, J.) ("A debtor's transfer of a company's assets, even if the debtor is an insider of the company, does not constitute a transfer of the debtor's property for purposes of § 727(a)(2).") (citing to *Gebhardt v. McKeever (In re McKeever)*, 550 B.R. 623 (Bankr. N.D. Ga. 2016) (Hagenau, J.) finding that individual debtor's transfer of corporate assets generally does not result in denial of discharge).

cannot avoid transfers which were not made by Debtor.  Trustee's silence on this point is telling.[13]

Trustee offers no legal support for his allegations in Counts II and III that allege Debtor has an

interest in any transfers made by the LLC. For the foregoing reasons, the claims against the LLC

in Counts II and III will be dismissed without prejudice to Trustee's right to replead a viable claim

for recovery.

### 3.    Reasonably Equivalent Value Allegations in Count III

Defendants also assert that any transfers made by Debtor for the payment of the utilities,

property taxes, and overall upkeep of the Marietta Property qualify as reasonably equivalent value

and thus are not avoidable. Trustee does not address Defendants' assertion on this point at all in

his Response.  Defendants cite a substantial body of law holding that household expenses are

supported by reasonably equivalent value since they are obligations to sustain a debtor's family.

Those cases, however, were all decided long after the preliminary pleading stage.[14]  The Complaint

alleges that such transactions were made for less than reasonably equivalent value in Count III.

This allegation is a legal conclusion, the veracity of which would require the Court to examine the

factual circumstances of the transactions Trustee references in the Complaint.  Too many factual

issues remain unanswered at the pleadings stage of the case for the Court to say as a matter of law

that the transactions were or were not supported by reasonably equivalent value as payment for

household expenses.  Accordingly, the Court will deny Defendants' request to dismiss Count III

---

[13] Parsing through Trustee's Response in search of some support for his position, the only thing the Court can find is his reliance on *McLean* which Trustee cites to in opposition to Defendant's request for dismissal of Count VII.  As noted above, however, this Court has been unable to find cases in Georgia with findings analogous to those in *McLean*, avoiding prior transfers labeled as misdirected income.  Given the substantial differences between Georgia and Maryland law in this area, the Court does not find *McLean* instructive.

[14] This issue is rarely decided on a motion to dismiss.  The court in *Geltzer v. Our Lady of Mt. Carmel-St. Benedicta School (In re Akanmu)*, 502 B.R. 124 (Bankr. E.D.N.Y. 2013), however, decided that the debtors' tuition payments for their children's private school were supported by reasonably equivalent value on a motion to dismiss.  Under state law, the debtor-parents were clearly legally obligated to provide for their children's education, and payment for provision of that education satisfied that obligation, thus qualifying as reasonably equivalent value. *Id.* at 132.  This case is not so clear cut, making a dismissal on these grounds inappropriate without further factual development.

based on the assertion that the Spousal Transfers made for household expenses were supported by reasonably equivalent value.

G.     Counts IV and V

1.     *Transfers Made by the LLC*

Defendants argue that Trustee also cannot avoid any transfers made by the LLC under O.C.G.A. §§ 18-2-74 and 18-2-75 as alleged in Counts IV and V because those transfers are not transfers of Debtor's interest in property.  For the reasons stated in Section II.F.2, *supra*, Trustee cannot avoid any fraudulent transfers made by the LLC pursuant to O.C.G.A. §§ 18-2-74 and 18-2-75, and such claims will be dismissed without prejudice to Trustee's right to replead a viable claim for recovery.

2.     *Reasonably Equivalent Value Allegations in Count V*

Defendants also argue Trustee cannot recover the Spousal Transfers as alleged in Count V as constructively fraudulent transfers since those allegations seek to recover household expenses paid to or for Mrs. Webster.  For the reasons previously stated in Section II.F.3, *supra*, the Court declines to grant Defendants' request at the pleadings stage of the case.

3.     *Statutes of Limitations Arguments Under Federal and State Law*

Defendants also request dismissal of Counts IV and V of the Complaint under various statute of limitations arguments under both Georgia and federal law. As an initial matter, untimeliness of a claim under a statute of limitations is an affirmative defense under Rule 8, and a plaintiff has no obligation to anticipate and negate affirmative defenses in its complaint.  Thus, the Eleventh Circuit has made clear that dismissal on statute of limitations grounds "is 'appropriate only if it is apparent from the face of the complaint that the claim is time-barred' and 'only if it appears beyond a doubt that [a plaintiff] can prove no set of facts that toll the statute.'" *Sec'y of Labor v. Labbe*, 319 F. App'x 761, 764 (11th Cir. 2008) (citing *Tello v. Dean Witter Reynolds*,

*Inc.*, 410 F.3d 1275, 1292 (11th Cir. 2005)). With that in mind, the Court addresses each statute of limitations argument raised with respect to Counts IV and V below.

a.      Statute of Limitations under O.C.G.A. § 18-2-79(1)

First, Defendants argue that the time for bringing actions under O.C.G.A. § 18-2-74(a)(1) is limited to "four years after the transfer was made or the obligation was incurred or, if later, within one year after the transfer or obligation was or reasonably could have been discovered by the claimant." O.C.G.A. § 18-2-79(1). To the extent Trustee is seeking to use § 18-2-74(a)(1) to avoid either (a) the Transfer of the Marietta Property to Mrs. Webster in 2007 or (b) Debtor's payments for the mortgage on the Property, which began in 2003 and continued through the Petition Date, Defendants contend such claims are untimely. First, as noted in Section II.B., *supra*, the Court is unable to tell whether Trustee even seeks to avoid such transfers as part of Counts IV or V, but to the extent he does, any claims related to the Transfer of the Marietta Property would be untimely under Georgia law. Only some of the mortgage payments would be untimely, but as Defendant's correctly note, such payments are directed to the mortgage holder to satisfy Debtor's mortgage obligation. Trustee would be required to bring a separate action against the mortgage holder as transferee to avoid those payments. *See* 11 U.S.C. § 550 (allowing trustee to recover property transferred or its value from initial or subsequent transferees); Peter Spero, Fraudulent Transfers, Prebankruptcy Planning and Exemptions § 18:13 (2020) ("Normally, the transferor and transferee are joined in the action."). Trustee's Response either does not contest this position or relies on other available statutes which are addressed below.

Any attempt to avoid the Marietta Property Transfer pursuant to O.C.G.A. § 18-2-74(a)(1) fails because third parties were on constructive notice of the Marietta Property Transfer in 2007, triggering the start of any applicable statute of limitations. In Georgia, recording a deed in the

property records acts as constructive notice to third parties.[15]  Trustee alleges Debtor transferred

his interest in the Marietta Property to Mrs. Webster via Quit Claim Deed on August 30, 2007 that

was recorded in the County Clerk's office on September 14, 2007.  Compl. ¶¶ 28, 29.  From the

day the deed was recorded, any subsequent purchaser or judgment creditor would be on notice of

the transfer and any applicable statute of limitations under O.C.G.A. § 18-2-79(1) started running

as of that date.  Because that date falls more than ten years before the Petition Date, it falls outside

the applicable statute of limitations.[16]  Therefore, Trustee cannot avoid the Transfer of the Marietta

Property pursuant to O.C.G.A. § 18-2-74(a)(1).

### b.    Mortgage Payments and O.C.G.A. § 18-2-79

Defendants also argue that any fraudulent conveyance claim regarding the mortgage

payments paid by Debtor prior to the four-year statute of limitations in O.C.G.A. § 18-2-79 is also

barred.  They argue that creditors would be on notice of the mortgage and any payments thereof

since it was recorded in 2003, again citing to *Cunningham* as well as *Leeds Bldg. Products, Inc. v.*

*Sears Mtg. Corp.,* 267 Ga. 300, 302 (1996) and *KB Aircraft Acquisition, LLC v. Berry*, 790 S.E.2d

559, 569 (N.C. App. 2016).  Those cases dismiss avoidance actions brought outside the statute of

limitations since the deeds evidencing those transfers were publicly recorded.  Defendants also

argue that to the extent Trustee seeks to avoid mortgage payments made within the statute of

---

[15]  *See Cunningham v. Gage,* 301 Ga. App. 306, 307 (2009) (refusing to toll statute of limitations where property was transferred in quit claim deed recorded eight years prior) and *Deljoo v. Suntrust Mortg., Inc.*, 284 Ga. 438, 439 (2008) (citing O.C.G.A. § 44-2-2(b) for rule that notice to third parties takes effect when instrument is filed for record in clerk's office). *See also Detention Mgmt., LLC v. UMB Bank, N.A. (In re Mun. Corr., LLC)*, 501 B.R. 119, 137 (Bankr. N.D. Ga. 2013) (Bonapfel, J.) (holding that recorded lease provides third parties with notice of interest of parties to lease in property described in instrument and of interest of any person holding assignment of interest in such lease); *Marvin Hewatt Enters., Inc. v. Kyu Sup Mun (In re Kyu Sup Mun),* 458 B.R. 628, 632 (Bankr. N.D. Ga. 2011) (Diehl, J.) ("Filing a deed in county property records does no more than put the world on notice that the transfer occurred, thereby protecting the transferee from subsequent purchases or liens by third-parties.").

[16]  Trustee pursuing claims on behalf of the IRS may not be bound by this period.  *See* Section II.G.3.c., *infra.*  That section addresses the limitation period applicable to the IRS separately as it is a separate and distinct issue.

limitations, such transfers were for reasonably equivalent value as household expenses. Trustee does not respond to Defendants' arguments against avoiding any of the mortgage payments and made no specific allegations attempting to avoid mortgage payments in the Complaint. As previously stated, however, the Complaint is not a model of clarity.

Nonetheless, the Court does not interpret the Complaint to make such allegations. Count I excludes payments on the mortgage and acknowledges Debtor's liability for that secured debt. It states, "except possibly for payments on the mortgage or security deed on the [Marietta] Property for which Debtor is liable . . . Debtor's payments from his own funds or from accounts of the LLC to pay for his wife's debts are fraudulent transfers." Compl. ¶ 47. Moreover, the Complaint makes no allegations as to how mortgage payments made to a lender can be recovered from the Defendants. Because the Court does not read the Complaint to seek recovery of mortgage payments from Defendants, the Court need not address Defendants' other arguments relative to such transfers. To the extent Trustee in any amended complaint asserts claims for recovery of mortgage payments, the Court can address any remaining arguments of Defendants raised in response to any amended complaint.

c.      Extended Statute of Limitations Under 26 U.S.C. § 6502

Defendants also argue that Trustee improperly attempts to use the ten-year period in 26 U.S.C. § 6502 ("§ 6502") as a lookback period to avoid transfers that arose prior to the IRS claims in 2012 through 2017. They argue this section cannot be used to avoid transactions that occurred before the taxes were assessed, and that the time during which the IRS could collect for the unpaid taxes began to run, at earliest, in 2013. In the Complaint, Trustee contends he may avoid any transfers to Mrs. Webster as far back as 2008, and perhaps even earlier, pursuant to § 544(b) of the Bankruptcy Code, which allows a trustee to avoid "any transfer…or obligation incurred by the debtor that is voidable under applicable law" by a creditor holding an unsecured claim. Trustee

25

cites § 6502 as "applicable law" authorizing him to reach back ten years before the Petition Date. That section specifically provides:

> (a) Length of period. -- Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun--
>
> (1) within 10 years after the assessment of the tax….

26 U.S.C. § 6502(a)(1). Defendants argue that by its terms, § 6502 is a statute of limitations that governs the time in which the IRS may collect assessed taxes and is not a lookback period for asserting avoidable transfer claims assessed against a transferee. Defendants contend Trustee's position on this point has been rejected by several courts. In response, Trustee string cites multiple cases without explanation, leaving it to the Court to decipher how such cases support Trustee's position. (Resp. 10).

Resolution of this issue must begin with an analysis of the applicable statutes. Section 544 of the Bankruptcy Code grants trustees derivative standing to pursue causes of action that can be pursued by unsecured creditors of the debtor. Under § 544(b)(1) "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title…." 11 U.S.C. § 544(b)(1). This section "enables a trustee to do in a bankruptcy proceeding what a creditor could do outside of bankruptcy – except the trustee will recover the property for the benefit of the estate." *Ebner v. Kaiser (In re Kaiser)*, 525 B.R. 697, 708 (Bankr. N.D. Ill. 2014) (quoting *In re Equip. Acquisition Res., Inc.,* 742 F.3d 743, 746 (7th Cir. 2014)). If an unsecured creditor could reach a debtor's asset outside of bankruptcy, a trustee can use § 544(b) to recover the asset for the benefit of the bankruptcy estate. *Id.* A trustee, however, must stand in the shoes of an actual unsecured creditor and becomes subject to the same

26

rights and limitations that the actual unsecured creditor would face outside of bankruptcy. *Id*. Thus, if the actual unsecured creditor would be barred from pursuing the claim – whether for statute of limitations or other defenses – the trustee likewise would be barred from pursuing the claim. *Id*.[17]

Most courts considering the issue agree that where the IRS is an unsecured creditor of a debtor's bankruptcy estate, the trustee may stand in the shoes of the IRS and pursue claims the IRS could pursue outside of bankruptcy.[18] The courts reaching this conclusion do so based on a plain reading of § 544.[19] The Court agrees with those courts and finds that a plain reading of § 544 requires the Court to find that Trustee here may step into the shoes of the IRS and pursue any claims the IRS could pursue against Debtor or other parties. That answer is easy enough.

A much more difficult question, and one for which less unanimity exists in the courts, is how any statute of limitations applicable to the IRS applies to claims a trustee seeks to pursue. Trustee cites § 6502 as authority for his ability to reach back ten years from the Petition Date to pursue any claims the IRS could pursue, and numerous cases appear to support that position.[20]

---

[17]  An avoidance action under § 544(b) is timely if the unsecured creditor's claim was timely under applicable nonbankruptcy law as of the filing of the bankruptcy petition and the trustee brings the action within the time specified by § 546(a). *Id*; 11 U.S.C. § 546(a). The Court previously concluded in Section II.C., *supra*, that the Complaint was timely under § 546(a).

[18]  *See Prillaman v. Monroe (In re Grobner)*, No. 17-90819, No. 18-09025, 2019 WL 2031060, at *3 (Bankr. C.D. Ill. 2019); *Vieira v. Gaither (In re Gaither)*, 595 B.R. 201 (Bankr. D.S.C. 2018); *Hillen v. U.S. Bank, N.A. (In re CVAH, Inc.)*, 570 B.R. 816 (Bankr. D. Idaho 2017); *Mukamal v. Kipnis (In re Kipnis)*, 555 B.R. 877 (Bankr. S.D. Fla. 2016); *Gordon v. Harrison (In re Alpha Protective Servs., Inc.)*, 531 B.R. 889 (Bankr. M.D. Ga. 2015); *In re Kaiser*, 525 B.R. 697 (Bankr. N.D. Ill. 2014); *In re Tronox, Inc.*, 503 B.R. 239 (Bankr. S.D.N.Y. 2013). *But see Wagner v. Ultima Homes, Inc. (In re Vaughan Co.)*, 498 B.R. 297 (Bankr. D.N.M. 2013) (holding that Congress did not intend to vest federal government's sovereign powers in trustee to pursue private rights of actions utilizing ten-year statute of limitations in § 6502). Numerous cases, however, have rejected *Vaughan* on grounds that it improperly emphasizes congressional intent and policy concerns over the plain language of the statute. *Gaither,* 595 B.R. at 210; *CVAH,* 570 B.R. at 835; *Kipnis,* 555 B.R. at 883; *Kaiser,* 525 B.R. at 713. The Court agrees with those cases rejecting *Vaughan*'s analysis.

[19]  *CVAH*, 570 B.R. at 824; *Gaither*, 595 B.R. at 210; *Kipnis*, 555 B.R. at 882-83; *Alpha Protective Servs.*, 531 B.R. at 906; *Kaiser*, 525 B.R. at 711.

[20]  *CVAH,* 570 B.R. at 837 (concluding that trustee standing in shoes of IRS could avoid transfers, though trustee would also be immune to state statutes of limitations, making § 6502 the appropriate period); *Kipnis,* 555 B.R. at 881 (concluding "IRS has ten years from the date of assessment to pursue an avoidance action"); *Kaiser,* 525 B.R. at 713

Indeed, most cases analyzing the statute of limitations applicable to the IRS when it pursues state law avoidance actions hold that § 6502 is the proper period to apply, whether in bankruptcy or nonbankruptcy contexts, because the IRS is immune to state statutes of limitations.[21]  Based on the extensive number of cases holding that § 6502 is the appropriate period to apply to the IRS when it brings avoidance actions under state law, the Court finds that the ten-year statute of limitations in § 6502 would apply to Trustee, whose standing is derivative of the IRS, when pursuing state law fraudulent conveyance claims.[22]

The remaining issue is whether § 6502 operates as a lookback period stretching back ten years without regard for the date tax liability accrued or taxes were assessed or whether that period is forward-looking from the date of assessment.  Some courts have found that § 6502 is a lookback period and that a trustee may avoid transfers that occur even prior to tax liability because the "applicable law" provides that certain transfers may be avoided even though they occurred before the creditor's claim arose.[23]  Despite this conclusion, the court in *CVAH* "expressed concern at

(dismissing policy concerns over trustee's ability to use period in § 6502 as a lookback period when standing in IRS's shoes); *Finkel v. Polichuk (In re Polichuk),* 506 B.R. 405, 420 (Bankr. E.D. Pa. 2014) (allowing trustee to reach back ten years from date of petition to avoid certain transfers by stepping into IRS's shoes and utilizing § 6502).

[21] *See United States v. Hoyt*, 524 F. Supp. 2d 638, 641 (D. Md. 2007) ("As courts have consistently held, the statute of limitations relevant to the government's fraudulent transfer action against a taxpayer is the ten-year limitation imposed by 26 U.S.C. § 6502(a)."); *United States v. Cody*, 961 F. Supp. 220, 221 (S.D. Ind. 1997) (collecting cases); *United States v. Bushlow*, 832 F. Supp. 574, 580-81 (E.D.N.Y. 1993) (citing to *United States v. Summerlin*, 310 U.S. 414 (1940) to support proposition that IRS is not bound by state law statutes of limitations and finding that § 6502 is instead proper period to apply to IRS for fraudulent conveyance actions).

[22] In the Motion, Defendants mention in passing the statute of limitations to assess transferee liability under § 6901. However, that statute and collections actions under § 6502 are alternative methods for establishing transferee liability. *See CVAH*, 570 B.R. at 832 (citations omitted) ("IRC § 6901 is not the only means available to IRS to recover transfers made by a taxpayer to another. Rather than 'assessing' the transferee, it can also sue to obtain that relief. An action by IRS against a transferee from the taxpayer is a 'collection suit,' and is subject to the ten-year limitation period in IRC § 6502."). The Eleventh Circuit has held that assessment against a transferee under § 6901 is not required for the IRS to pursue direct action against transferees under state law.  *United States v. Henco Holding Corp*., 985 F.3d 1290, 1305 (11th Cir. 2021).  Because the IRS is immune to the state statutes of limitations, § 6502 allows the IRS ten years from assessment of the original taxpayer to pursue those state law causes of actions against a transferee.  *Id.*  For that reason, and because Trustee's Complaint does not cite to § 6901, the Court declines to consider § 6901's applicability.

[23] *See United States v. Perrina*, 877 F. Supp. 215, 218 (D.N.J. 1994) (citing to state statute allowing avoidance as to future creditors in denying defendant's argument that IRS could not avoid transfer made before assessment, however, tax liability had already accrued at time of transfer); *Murphy v. ACAS, LLC (In re New Eng. Confectionary Co.),* No.

how this 10–year period translates into a 'look-back' period, since it is measured from the date of an assessment rather than the date of the transfer, as is found in the extinguishment period in the Idaho UFTA." 570 B.R. at 838 n.19. The Court shares that concern.

Other cases reject that § 6502 contains a lookback period and suggest that assessment must trigger the forward-looking statute of limitations. For example, one of the cases Trustee cites in his Response, *Alpha Protective Services,* refused to find the section acts as a lookback period, reasoning:

> Although it is true that § 6502(a)(1) allows the IRS a ten year period to bring a collection action, I see nothing in § 6502(a)(1) that provides for an extension of the two year reach back period outlined in § 3306(b)(3) for insider preference actions brought under § 3304(a)(2). Section 6502(a)(1) provides a "limitation period," rather than a "reach back period" as provided in § 3306. The Trustee has cited no cases, and the Court is aware of none that supports the Trustee's position. Therefore, the Trustee's § 3304(a)(2) insider preference claims are limited to the reach back period provided in § 3306(a)(3).

531 B.R. at 908.[24] Similarly, the court in *Luria v. Thunderflower, LLC (In re Taylor, Bean & Whitaker Mortg. Corp.),* Nos. 3:09-BK-07047-JAF, 3:11-ap-0693-JAF, 2018 WL 6721987, at *6 (Bankr. M.D. Fla. Sept. 28, 2018) found no basis to allow the IRS to avoid transfers made prior to

---

18-11217-MSH, 18-01140, 2019 Bankr. LEXIS 2281 at *6 (Bankr. E.D. Mass. July 19, 2019) ("The date the IRS's claim came into existence may matter depending upon the basis for the trustee's claim."); *CVAH,* 570 B.R. at 842 ("Simply put, whether a transfer is fraudulent as to, and therefore recoverable on behalf of, only existing creditors depends on the statute invoked by the trustee to support the avoidance claim."); *Polichuk,* 506 B.R. at 428 (holding that trustee could invoke IRS's extended statute of limitations to avoid transfers up to ten years prior to filing of bankruptcy petition despite lack of assessment); *Shearer v. Tepsic (In re Emergency Monitoring Tech., Inc.),* 347 B.R. 17, 19 (Bankr. W.D. Pa. 2006) (holding that trustee could conceivably prove set of facts that would allow avoidance of transfer that occurred before IRS's claim arose under state statute allowing future creditors to recover); *Alberts v. HCA, Inc. (In re Greater Se. Cmty. Hosp. Corp. I),* 365 B.R. 293, 308 (Bankr. D.D.C. 2006) ("The IUFTA allows future creditors to utilize its remedies. There is no great injustice in allowing HHS or the IRS to have a fraudulent transfer claim under the IUFTA without a set statute of limitations.").

[24] The Court notes that for this particular holding the trustee in that case was attempting to extend the statute of limitations of a federal provision which is a distinct situation. Although the IRS is immune from state statutes of limitations based on principles of federalism, it is not immune to federal limitations. Therefore, it would not follow that the trustee could use § 6502 to extend another federal limitation period. The court elsewhere rejected the trustee's argument to use § 6502 as a lookback period for state law claims, citing to this quotation for its reasoning. 531 B.R. at 904 n.15.

the tax assessment or accrual of tax liability.  The court there rejected the trustee's position that any transfer made within ten years before the petition date would possibly be avoidable.  *Id*. Furthermore, the IRS in most cases have already assessed taxes and seeks to avoid transfers which occurred after tax liability accrued, suggesting that such actions generally depend on both factors' existence.[25]

A plain reading of § 6502 indicates that the IRS must pursue collection within ten years of completing an assessment.  Section 6502 "makes clear that it is the 'assessment' itself that, once made, starts the running of the ten-year period within which the IRS can commence efforts to collect an assessed tax." *Remington v. United States*, 210 F.3d 281, 284 (5th Cir. 2000).  In *Henco*, the Eleventh Circuit found that where the IRS has timely assessed tax liability against the original taxpayer, the IRS may pursue a fraudulent transfer action against a transferee without first making an assessment against that transferee under § 6901, as "it is the tax that is assessed, not the taxpayer" and that "[o]nce a tax has been properly assessed, nothing in the Code requires the IRS to duplicate it efforts" to assess the same tax against multiple liable entities.  985 F. Supp. at 1301, 1305 (quoting *United States v. Galletti*, 541 U.S. 114 (2004)).  The government's timely

---

[25] *See, e.g., Henco*, 985 F. Supp. at 1305 (allowing IRS to utilize § 6502 in state law action where assessment against taxpayer/transferor was timely); *United States v. Fernon,* 640 F.2d 609 (5th Cir. 1981) (allowing IRS to bring suit to avoid transfer that occurred in 1965 where tax liability accrued beginning in 1962, timely assessment occurred on original taxpayer in 1968, and action was filed within period stated in § 6502); *United States v. Hoyt*, 524 F. Supp. 2d 638, 641 (D. Md. 2007) (allowing IRS to bring suit to avoid transfers that occurred in 1998 and 1999 where penalties were assessed in 1996 and the complaint was filed within period stated in § 6502);  *Perrina*, 877 F. Supp. at 218 (allowing suit to avoid transfer that occurred in 1985 after tax liability already accrued where assessment was timely made in 1987 and suit was filed within period in § 6502); *Bushlow*, 832 F. Supp. at 581 (holding suit timely filed in 1988 to avoid transfer made in 1977 where tax assessments were made in 1983 and transfer occurred after tax liability accrued); *United States v. Tranakos*, 778 F. Supp. 1220, 1224 (N.D. Ga. 1991) (holding suit to avoid transfers made in 1980 through 1985 timely filed in 1988 where assessment occurred in 1986 and tax liability accrued beginning in 1975); *Kipnis*, 555 B.R. at 881 (allowing suit where transfers occurred in 2005 and 2015, tax liability accrued in 2000, taxes were assessed in 2005, and bankruptcy petition filed in 2014).  *But see Polichuk*, 506 B.R. at 420 ("Indeed, if the IRS has not made an assessment, tax liability may be established by a judicial proceeding, so long as the applicable assessment period has not run. . . . Thus, the lack of an assessment does not prevent the IRS from holding a claim which may serve as the foundation for the Trustee's use of 11 U.S.C. § 544(b) to invoke the IRS' extended statute of limitations."); *Kaiser*, 525 B.R. at 711 ("If no tax return is filed, assessment of tax liability against the taxpayer can be made at any time.").

assessment of the tax liability then triggered "the ten-year time period for collection of those assessed taxes under § 6502." *Id.* The Eleventh Circuit's emphasis on timely assessment in *Henco* is significant. The plain language of the statute provides that the date of the assessment is key, whereas fraudulent conveyance provisions under state and federal law focus on the date of the transfer. *CVAH*, 570 B.R. at 838 n.19. Considering the focus on assessment in case law and the statutory text, the Court cannot find that § 6502 operates to avoid transfers up to ten years prior to the petition irrespective of the status of tax liability or assessment.[26]

Moreover, the Court cannot determine how § 6502 would apply as a matter of law in this case based on the allegations of the Complaint. Here, Trustee alleges that the IRS filed a proof of claim for tax years 2012 through 2017. Compl. ¶ 34. Because the Court cannot take judicial notice of the contents of the IRS's proof of claim, this allegation provides the only information on which the Court could base its analysis.[27] On this basis alone, the Court cannot determine whether or when taxes have been assessed to apply the statute of limitations in § 6502. Although there may be exceptions to pursuing actions after assessment, such as when tax returns have not been filed, the Court also has no information whether any such exception to the general assessment period exists in this case to toll the beginning of the ten-year period. Accordingly, the Court must deny the Motion on this issue as it is not apparent from the face of the Complaint that the claim is time-barred, and it does not appear beyond a doubt that Trustee can prove no set of facts that toll the statute. *Labbe*, 319 F. App'x at 764.

---

[26] This is not to say that the IRS would never be able to avoid transfers occurring prior to tax liability. This section is distinct from the fraudulent transfer provisions of the Federal Debt Collection Procedures Act allowing avoidance regardless of the claim's origin date.

[27] *See Alpha Protective Servs.*, 531 B.R. at 907 ("The Court may take judicial notice that the IRS has filed a proof of claim, but it cannot take judicial notice of the contents of that claim because such facts must be evaluated using ordinary evidentiary rules, such as hearsay and its exceptions.").

d.       Federal Debt Collection Procedures Act as "Applicable Law"

Defendants further request the Court dismiss any of Trustee's claims arising under the

Federal Debt Collection Procedures Act (the "FDCPA") and § 544(b) as alleged in Counts IV and

V.  Defendants urge the Court to follow the line of cases holding that the FDCPA is not "applicable

law" for purposes of § 544.  Trustee's Response again does not provide any meaningful

explanation of the string citation, noted in the previous section, and simply asserts that Trustee

"has a cause of action to avoid the Spousal Transfers for at least a ten-year period preceding the

Petition Date, and possibly longer."  (Resp. 9).  Nevertheless, many of the cases Trustee cites

support that a trustee may step into the IRS's shoes and assert rights under the FDCPA as

"applicable law" under § 544.

Courts are currently split on the issue, and no binding precedent exists on this point in the

Eleventh Circuit.  The Fifth Circuit Court of Appeals in *In re Mirant Corp.*, 675 F.3d 530 (5th Cir.

2012) and the United States District Court for the Northern District of Georgia in an unreported

opinion *MC Asset Recovery, LLC v. Southern Co.*, No. 1:06-CV-0417-BBM, 2008 WL 8832805

(N.D. Ga. July 7, 2008) (Martin, J.) found that courts could not treat the FDCPA as "applicable

law" under § 544.  The court in *MC Asset Recovery* found that "the FDCPA represents the

exclusive civil procedures for the United States, and no other entity, to utilize in collecting its

debts." 2008 WL 8832805, at *4.  Furthermore, 28 U.S.C. § 3003(c) states that the FDCPA shall

not be construed to supersede or modify the Bankruptcy Code.  *Id.*  Those two provisions

persuaded the court in *MC Asset Recovery* that the FDCPA should not be included as "applicable

law" and that declining to do so would comport "with the purpose of the FDCPA, which was only

to create a uniform and efficient collection framework for the federal government to recover debts

owed to it."  *Id.*  Both *MC Asset Recovery* and *Mirant* point to comments in the FDCPA's

legislative history from Representative Jack Brooks, the Committee Chairman at the time, that

suggest the FDCPA provisions were meant to have a very restricted effect.  *Id.; Mirant,* 675 F.3d at 535-36.  Based on the above provisions, and this legislative history, the courts reasoned that it would impermissibly modify Title 11 to interpret the FDCPA as "applicable law," violating 28 U.S.C. § 3003(c).  *MC Asset Recovery*, 2008 WL 8832805, at *4; *Mirant*, 675 F.3d at 535. Defendants ask the Court to follow this line of cases.

In contrast, many bankruptcy courts have reached the opposite conclusion.[28]  By following established principles of statutory construction, these cases hold the FDCPA to be "applicable law" allowing a trustee to use the reach back provision of 28 U.S.C. § 3306 to avoid fraudulent transfers pursuant to § 544. First, courts must begin with the statutory text when interpreting the Code, which must be enforced according to its terms when the language is plain.[29]  Second, "in the absence of a contrary definition within the Code, its words are presumed to have their ordinary meaning."[30]  Applying this plain language approach, these courts found § 544 unambiguously provides "that a trustee may avoid any transfer that is voidable under applicable law by a creditor holding an allowed unsecured claim."[31]  The only limitation to "applicable law" within that section is that a "'triggering' creditor into whose shoes the trustee steps must be able to avoid a transfer under the selected law."[32]   That creditor is also only limited to creditors holding allowed,

---

[28]  *See In re Grobner,* Nos. 17-90819, 18-09025, 2019 WL 2031060, at *3 (Bankr. C.D. Ill. 2019); *In re Gaither*, 595 B.R. 201 (Bankr. D.S.C. 2018); *In re CVAH, Inc.*, 570 B.R. 816 (Bankr. D. Idaho 2017); *In re Kipnis*, 555 B.R. 877 (Bankr. S.D. Fla. 2016); *In re Alpha Protective Servs., Inc*., 531 B.R. 889 (Bankr. M.D. Ga. 2015); *In re Kaiser*, 525 B.R. 697 (Bankr. N.D. Ill. 2014); *In re Tronox*, 503 B.R. 239 (Bankr. S.D.N.Y. 2013).

[29]  *CVAH,* 570 B.R. at 824; *Alpha Protective Servs.,* 531 B.R. at 906.

[30]  *CVAH,* 570 B.R. at 824; *Alpha Protective Servs.,* 531 B.R. at 906.

[31]  *CVAH,* 570 B.R. at 825; *see also Tronox*, 503 B.R. at 273 (noting that § 544 "permits a debtor to avoid transactions that are voidable under applicable law by a creditor holding an unsecured claim that is allowable under § 502 of the Bankruptcy Code or that is not allowable under § 502(e) of the Code").

[32]  *CVAH,* 570 B.R. at 825; *see also Kaiser*, 525 B.R. at 711-12 ("The language of section 544 is clear and without limitation other than that expressly set forth therein."); *Grobner*, 2019 WL 2031060, at *4 (holding "applicable law" contained no limits on or modifiers of that term).

unsecured claims.[33]  Given those parameters are the sole limitations provided in the text, the phrase "applicable law" should be construed broadly.[34]

The purpose of the statute provides additional support for this broad interpretation. Allowing a trustee to utilize all available "applicable law" would further § 544(b)(1)'s purpose "to restore the bankruptcy estate to the financial condition it would have enjoyed if the fraudulent transfers had not occurred." *CVAH,* 570 B.R. at 825.  Moreover, the courts in *Gaither* and *CVAH* found that such a meaning would be consistent with the Supreme Court's decision in *Patterson v. Shumate,* 504 U.S. 753 (1992), which broadly interpreted § 541's similar phrase, "applicable nonbankruptcy law." *Gaither*, 595 B.R. at 214; *CVAH,* 570 B.R. at 825-26.  The Supreme Court "observed that when Congress intended that applicable law be limited to 'state law,' it made its intent known in the Code." *CVAH,* 570 B.R. at 826 (citing *Patterson*, 504 U.S. at 758).  Because Congress did not expressly limit § 541 to state law, "applicable nonbankruptcy law" was construed broadly to include federal law as well.  *Gaither,* 595 B.R. at 214; *CVAH,* 570 B.R. at 826. Applying *Patterson*'s reasoning to § 544's similar terminology, those courts concluded Congress also did not intend to restrict the reach of "applicable law" in § 544.  *Gaither,* 595 B.R. at 214; *CVAH,* 570 B.R. at 826

This majority line of cases rejects *Mirant*'s and *MC Asset Recovery*'s conclusion that the FDCPA itself prohibits its use in the bankruptcy context.  Those courts denied that 28 U.S.C. § 3003(c) prohibited the trustee's reliance on the FDCPA because it would impermissibly modify

---

[33] *CVAH,* 570 B.R. at 825; *Alpha Protective Servs.,* 531 B.R. at 906; *Kaiser,* 525 B.R. at 708 ("The Trustee's powers under section 544(b) are conditioned on there being 'an unsecured creditor of the debtor that actually has the requisite nonbankruptcy cause of action.'").

[34] *Grobner,* 2019 WL 2031060, at *4; *CVAH,* 570 B.R. at 825.

the operation of the Bankruptcy Code.[35]  The sole operation of § 544 is to allow the trustee to

invoke all applicable laws that a qualified creditor could utilize.[36]  Once that "applicable law" is

identified, per the specific context of the case, the operation of § 544 is complete.  *CVAH,* 570

B.R. at 829.  Section 544 does not identify specific laws a trustee may use, and it does not prescribe

how the law is to be applied nor what specific result need be obtained.  *Id.*  The *Kaiser* court

helpfully analogized the operation of § 544 to inputting variables into a formula.  525 B.R. at 713

n.11.  "Section 544 is simply an enabling formula.  What variables are input into section 544 will

always change the result, but that is not a modification of either section 544's operation or of the

operation of Title 11 as a whole."  *Id.*  Therefore, utilizing the FDCPA's longer lookback period

does not impact or change § 544's operation in any way.

The majority line of cases further found *Mirant*'s and *MC Asset Recovery*'s reliance on the

FDCPA's legislative history misplaced.[37]  They found the language of the FDCPA to be plain and

unambiguous, which negated the need to turn to the statute's legislative history.  *Grobner,* 2019

WL 2031060, at *4.  Among other things, "[a] court must be cautious in relying on a single

comment made by an individual congressman in the process of enacting legislation in Congress,"

especially when looking at legislative history is unnecessary.[38]  Overall, these courts found that

cases in the minority relying on the language and legislative history of the FDCPA gave far too

little weight to the language and purpose of § 544, the focus of which "is not on whether a

---

[35]  *Grobner,* 2019 WL 2031060, at *4; *CVAH,* 570 B.R. at 829; *Kaiser,* 525 B.R. at 713; *Tronox*, 503 B.R. at 273.

[36]  *CVAH,* 570 B.R. at 829; *see also Kaiser,* 525 B.R. at 708 (stating that § 544 "enables a trustee to do in a bankruptcy proceeding what a creditor would have been able to do outside of bankruptcy—except the trustee will recover the property for the benefit of the estate").

[37]  *Grobner,* 2019 WL 2031060, at *4; *CVAH,* 570 B.R at 829; *Tronox*, 503 B.R. at 273.

[38]  *Grobner,* 2019 WL 2031060, at *4; *CVAH,* 570 B.R at 829; *Tronox*, 503 B.R. at 273 (rejecting *Mirant* because "holding that the Code 'should be read as if the FDCPA did not exist' gives too much weight to a comment in the legislative history").

*bankruptcy trustee* may prosecute an avoidance action," but "on whether the *creditor* into whose shoes the trustee has stepped may pursue avoidance."[39]

The Court finds the reasoning of the majority line of cases persuasive.  The language of § 544 is plain and that language does not limit what "applicable law" a trustee may use once the trustee establishes the creditor has an allowable, unsecured claim.  Cases holding otherwise ignore the plain language of the statute, which the Court must enforce according to its explicit terms, and improperly place weight on the language and legislative history of the FDCPA.  The Court therefore concludes Trustee may use § 544 of the Bankruptcy Code to apply the provisions of the FDCPA to this case.  Defendants' Motion will be denied to the extent it seeks dismissal on that basis.

### 4.    *28 U.S.C §§ 3304 and 3306 and Constructively Fraudulent Transfers*

Defendants finally argue that Trustee cannot avoid any constructively fraudulent transfers prior to when the IRS debt originated.  Defendant is correct that a debt owed to the United States must predate constructively fraudulent transfers under 28 U.S.C. § 3304(a) whereas transfers made with actual intent to hinder, delay, or defraud a creditor under 28 U.S.C. § 3304(b)(1)(A) may arise before or after the debt is incurred.  Defendants ignore, however, 28 U.S.C. § 3304(b)(1)(B), which is a constructive fraud provision allowing avoidance regardless of when the debt arose with different conditions than in 28 U.S.C. § 3304(a).  *See Sergeant v. OneWest Bank, FSB (In re Walter),* 462 B.R. 698, 704 (Bankr. N.D. Ia. 2011) (allowing trustee to apply 28 U.S.C. § 3304(b) to avoid constructively fraudulent transfer made prior to IRS debt being incurred).  Notwithstanding this clarification of the law, Trustee did not state under which specific provisions of 28 U.S.C. § 3304 he alleges constructively fraudulent transfers and did not respond to

---

[39] *CVAH,* 570 B.R. at 831 (emphasis added); *see also Tronox*, 503 B.R. at 274 ("These decisions fail to give sufficient weight to the language and purpose of § 544(b) of the Bankruptcy Code.").

Defendants' arguments on this issue.  To the extent Trustee attempts to avoid constructively fraudulent transfers arising prior to the IRS's claim under 28 U.S.C. § 3304(a), Count V is dismissed without prejudice to Trustee's right to replead consistent with this opinion.

      H.     Trustee May Amend the Complaint

In Trustee's Response to the Motion, Trustee requests that should the Court find the Complaint deficient, the Court grant Trustee leave to amend.  Defendants note that Trustee's supporting case, *Friedlander v. Nims*, 755 F.2d 810 (11th Cir. 1985), has been abrogated and dispute whether Trustee has properly sought leave to amend the Complaint.  However, assuming Trustee has done so, Defendants argue that because Trustee knew of facts supporting his claims for years, and because now Trustee has presented "woefully deficient" claims, his request to amend should be denied, since the time has passed for making any valid claims.  The Court disagrees that all Trustee's allegations assert "legal theories that do not state a valid theory of recovery" as argued by Defendants.  To the extent Trustee may allege with particularity actually or constructively fraudulent transfers of Debtor's interest in property from Debtor to Mrs. Webster within applicable statutes of limitations, such allegations may state valid claims.  Therefore, the Court will grant Trustee's request for leave to amend the Complaint consistent with the findings contained herein.

Accordingly, for the foregoing reasons,

**IT IS ORDERED** that the Motion is **GRANTED in part and denied in part**.  The claims in Counts I and VII are hereby dismissed with prejudice. The remaining claims in Counts II through VI are hereby dismissed without prejudice and Trustee may replead those claims consistent with this ruling within 30 days of the entry of this Order.  Defendants shall thereafter have 14 days after service of any amended complaint to file responsive pleadings.

The Clerk's Office is directed to serve a copy of this Order on the Chapter 7 Trustee, Debtor, Maureen Ann Webster, Marque Homes, LLC, and the parties' respective counsel.

**<u>END OF DOCUMENT</u>**